OPINION OF THE COURT
 

 Rosenblatt, J.
 

 On this appeal, we must determine when the Attorney General may undertake prosecution of a criminal case pursuant to Executive Law § 63 (3). Most criminal prosecutions are conducted by District Attorneys, who are authorized to prosecute “crimes and offenses cognizable by the courts of the count-ties]” in which they serve (County Law § 700 [1]). The District
 
 *128
 
 Attorney’s prosecutorial power, however, is not exclusive. The Legislature has authorized the Attorney General to prosecute crimes upon the request of certain officials, including “the
 
 head
 
 of any * * * department, authority, division or agency of the state” (Executive Law § 63 [3] [emphasis added]). In the case before us, the request to prosecute was made not by the department head but by the department’s counsel. The Appellate Division concluded that defendant’s resulting conviction was a nullity because it was not clear that the head of the department (the Superintendent of State Police) authorized the request or even knew of it. We hold that the prosecutorial request did not conform to Executive Law § 63 (3), and therefore affirm the order of the Appellate Division reversing defendant’s conviction and dismissing the indictment.
 

 I.
 

 Based on a tip from defendant’s former girlfriend, the Attorney General’s office and the State Police conducted an investigation that gave rise to a search warrant for defendant’s home. Executing that warrant, investigators found 44 images of child pornography on defendant’s computer.
 
 [1]
 

 Glenn Valle, Counsel to the State Police, sent a letter to then-Attorney General Dennis Vacco, asking him to prosecute the case. Valle wrote on State Police stationery, with his name alone printed in the upper-left corner. The letter reads in its entirety as follows:
 

 “Dear Mr. Vacco:
 

 “Members of the New York State Police, working with investigators assigned to your Organized Crime Task force and Criminal Prosecutions Bureau, have developed information that Thomas J. Gilmour may be using the Internet to promote the use of a child in a sexual performance in violation of Penal Law Article 263. This conduct occurred within the State of New York.
 

 “Pursuant to Executive Law, Section 63(3), we request that you review the facts of the investigation and take whatever prosecutorial action you deem appropriate.
 

 
 *129
 
 “Thank you for your cooperation.
 

 “Very truly yours,
 

 /s/ Glenn Valle
 

 Glenn Valle
 

 Counsel”
 

 After receiving the letter, the Attorney General’s office presented the matter to a Grand Jury, which indicted defendant for possessing a sexual performance by a child
 
 (see
 
 Penal Law § 263.16). Defendant moved to dismiss the indictment, claiming that the letter did not comply with Executive Law § 63 (3), in that the request to prosecute was not made by the head of the State Police. Supreme Court denied the motion. Defendant was convicted following a trial at which an Assistant Attorney General represented the People. The Appellate Division reversed the conviction and dismissed the indictment, concluding that the letter did not meet the requirements of Executive Law § 63 (3)
 
 (see People v Gilmour,
 
 284 AD2d 341 [2001]). A Judge of this Court granted the People leave to appeal, and we now affirm.
 

 II.
 

 From New York’s earliest history, the scope of the Attorney General’s powers has involved “splitting of the prosecution with local prosecuting officers.”
 
 [2]
 
 Today’s case arises out of that division of authority, and requires us to examine the history and statutory delineation of the Attorney General’s prosecutorial powers.
 

 Prior to the War for Independence, the Attorney General of New York served the English Crown as this Colony’s chief law
 
 *130
 
 officer.
 
 [3]
 
 Through colonial times and until 1796, the Attorney General was the representative of the People in the courts, and “the only person who could conduct prosecutions for crime in their name” (Swanson,
 
 supra
 
 note 2, at 162).
 

 In 1796, the Legislature provided for some local control over criminal prosecutions by vesting prosecutorial power in “assistant Attorneys General,” who, despite their misleading title, were independent of the State Attorney General (see
 
 id.
 
 at 163-164; L 1796, ch 8). Under the enactment, an assistant Attorney General was to serve in each of the seven districts of the State (see L 1796, ch 8; 1 Chester, Legal and Judicial History of New York, at 426 [1911]), which then consisted of 22 counties.
 
 [4]
 
 In 1801, the Legislature created the office of District Attorney, so named to reflect the district — comprising a number of counties — over which that official would exercise prosecutorial power (see L 1801, ch 146). This “district” system continued until 1818, when the Legislature provided for the appointment of a separate District Attorney for each county (see L 1818, ch 283).
 
 [5]
 
 Some overlap existed, with the Attorney General continuing to retain a measure of prosecutorial power (see
 
 Matter of Turecamo Contr. Co.,
 
 260 App Div 253, 258 [1940] [“There was never an exclusive grant of power to the district attorneys. On the contrary, some degree of concurrent authority has been resident historically in another constitutional officer, the Attorney-General.”]).
 

 The New York State Constitution establishes the offices of Attorney General
 
 (see
 
 NY Const, art V, §§ 1, 4) and District Attorney
 
 (id.
 
 at art XIII, § 13), but does not specify or allocate the powers of the respective offices. To discern the scope of the Attorney General’s prosecutorial powers, we must turn to the history of Executive Law § 63, the provision now before us.
 

 
 *131
 
 III.
 

 We note at the outset that since 1796 the Legislature has never accorded general prosecutorial power to the Attorney General
 
 (see People v Di Falco,
 
 44 NY2d 482, 486 [1978] [per curiam]).
 
 [6]
 
 Indeed, this Court has pointed out that “the Attorney-General has no * * * general authority [to conduct prosecutions] and is
 
 ‘without any prosecutorial power
 
 except when specifically authorized by statute’ ”
 
 (People v Romero,
 
 91 NY2d 750, 754 [1998], quoting
 
 Della Pietra v State of New York,
 
 71 NY2d 792, 797 [1988] [emphasis in original]).
 
 [7]
 

 In 1892, the Legislature first crafted a statute authorizing the Attorney General to prosecute at the behest of certain officials. It was a two-fold grant. First, Executive Law § 52 (2) authorized the Attorney General to prosecute specific cases when so required by the Governor or a Justice of the Supreme Court (L 1892, ch 683). In essence, this involved filling the shoes of the District Attorney in a particular case. Second, Executive Law § 52 (3) provided a broader grant by which certain officials could ask the Attorney General to prosecute
 
 “every
 
 person charged [by the requesting official] with the commission of an indictable offense in violation of the laws” that fall under the official’s dominion
 
 (id.
 
 [emphasis added]).
 

 
 *132
 
 The statutory distinction between individual case prosecution (which required a request from the Governor pursuant to Executive Law § 63 [2]),
 
 [8]
 
 and the broader prosecutorial authority (requiring a request from one of several officials pursuant to Executive Law § 63 [3]) continued until 1965. In that year, the Legislature amended Executive Law § 63 (3) so that the officials enumerated in subdivision (3) were no longer faced with the choice of asking the Attorney General to handle all of the department’s criminal prosecutions or none of them. After the 1965 amendment, those officials were permitted to tap the Attorney General’s prosecutorial power in specific cases
 
 (see
 
 L 1965, ch 790 [providing that the Attorney General shall “investigate the alleged commission of any indictable offense or offenses in violation of the law * * *”]).
 

 In 1969, the Legislature again amended Executive Law § 63 (3) to allow “the head of
 
 any
 
 * * * department, authority, division or agency” to activate the Attorney General’s prosecutorial powers (L 1969, ch 814 [emphasis added]), and thereby avoid continual additions to the list
 
 (see
 
 Dept of Law Mem in Support, 1969 McKinney’s Session Laws of NY, at 2460 [“(B)y including all departments and agencies there will be no future need to amend the statute on a piece-meal basis to add other State agencies”]). That is how things stand today.
 

 IV.
 

 The evolution of Executive Law § 63 and its related provisions makes clear that the Legislature has sought to delineate meticulously the prosecutorial powers of the Attorney General. In keeping with that concern, this Court has held in an analogous context that if the Attorney General lacks power to prosecute a defendant, any resulting indictment must be dismissed
 
 (see People v Romero,
 
 91 NY2d 750, 758 [1998];
 
 see also People v Fox,
 
 253 AD2d 192, 195 [1999]).
 
 [9]
 

 In the case before us, the People resist dismissal, arguing that Valle’s status as counsel to the State Police should itself
 
 *133
 
 be sufficient for courts to presume that the agency head approved any request for the assistance of the Attorney General. We disagree. A request made by the counsel of a department does not satisfy the requirements of Executive Law § 63 (3) where there is no indication that the request was made at the express behest of the department head.
 

 We note that no construction of the statute can permit a deviation from its plain meaning. Executive Law § 63 (3) authorizes only the agency “head” to request that the Attorney General prosecute a case, and we cannot interpret the statute in a way that undermines the Legislature’s plainly expressed intent. If the Legislature intended that the prosecutorial powers of the Attorney General could be invoked by requests from counsel (not to mention deputy counsel, assistants, bureau chiefs, administrators or other ranking aides), it would have said so. We are unpersuaded by the argument that counsel “acts” for the department head so as to satisfy the strictures of the Executive Law. If that were the test, a host of other department personnel could trigger the statute, inasmuch as they all act on behalf of the department head. As worded, however, the statute requires the approval of the agency “head,” not “counsel,” and no showing has been made here that the Superintendent of State Police even knew of the request, let alone that he approved or directed it.
 

 Arguing that the prosecution complied with the statute, the People point out that Valle, as counsel to the State Police, had the duty to represent the Superintendent in legal matters and to assist in preparing criminal cases. In support, they cite
 
 People v Stuart
 
 (263 AD2d 347, 349 [2000]). There, the Appellate Division upheld a prosecutorial request made by counsel to the Department of Environmental Conservation where the Commissioner had in writing expressly delegated to counsel the duty to “coordinate with such offices as necessary with respect to criminal or civil enforcement”
 
 (id.,
 
 at 349). We are satisfied, however, that references to the duties of counsel here and in
 
 Stuart
 
 serve merely to illustrate that the Superintendent
 
 could have
 
 delegated authority to Valle, not that he did so
 
 (see People v Liebowitz,
 
 112 AD2d 383, 384,
 
 lv denied
 
 65 NY2d 928 [1985] [permitting the Deputy Superintendent and General Counsel of the Department of Insurance to request the assistance of the Attorney General when the deputy had author
 
 *134
 
 ity to act on the Superintendent’s behalf
 
 and
 
 he signed the request “for the superintendent”]).
 

 The People further contend that Valle’s letter is sufficient because it states that
 
 “we
 
 request that you review the facts of the investigation” (emphasis added). This argument would require us to infer that use of the pronoun “we” necessarily means that Valle was speaking on behalf of himself and the Superintendent. We are unwilling to draw that inference. The “we” could just as well connote the editorial “we” or refer to the investigative unit or to personnel in counsel’s office. Under these circumstances and in light of the statutory command, the mere choice of a pronoun is not enough. The agency head’s sponsorship or approval of the request must be clear and unambiguous to validate the invocation of the Attorney General’s prosecutorial power.
 

 We are also unpersuaded by the People’s reliance on
 
 Matter of Landau v Hynes
 
 (49 NY2d 128, 135 [1979]) to support their argument that the statute before us should be construed liberally to effectuate its intent. To begin with, there is the insurmountable obstacle that the intent of the statute is to allow prosecutions by the Attorney General when so requested by the agency head and not by any others.
 

 Moreover,
 
 Landau
 
 involved a prosecution by the Attorney General upon the request of two agency heads. The defendant Landau claimed that the letters of request did not comply with the law because they were not specific enough in identifying the offenses to be prosecuted. The Court disagreed, reasoning that agency heads cannot be expected to identify the precise criminal statutes that would form the basis for a prosecution. Indeed, the very point of the request is to allow the Attorney General, as prosecutor, to make that determination.
 
 Landau
 
 cannot be read as excusing compliance with the requirement that the request come from the agency head.
 

 Compliance with Executive Law § 63 (3) is not onerous. The State can easily satisfy its obligation by having the agency head sign the letter of request. Alternatively, the letter may be signed by his or her designee, provided there is a clear delegation of authority. Our holding confirms the Legislature’s bright-line rule. Simple compliance will eliminate the need to engage in hair-splitting analyses as to the type of letterhead used
 
 (see e.g. Gilmour,
 
 284 AD2d at 342 [case below];
 
 Liebowitz,
 
 112 AD2d at 384), whether the author of the letter sent a copy to the department head
 
 (see e.g. Stuart,
 
 263 AD2d at 348) or sim
 
 *135
 
 ilar vexatious inquiries that may lead to the dismissal of otherwise valid indictments and resultant re-prosecutions.
 

 We hold today that the State bears the burden of showing that the agency head has asked for the prosecutorial participation of the Attorney General’s office. The State has not made that showing here. Defendant’s conviction must therefore be reversed, and the indictment dismissed.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Wesley and Graffeo concur.
 

 Order affirmed.
 

 [1]
 

 . Before the Appellate Division, defendant challenged the issuance of the search warrant on Fourth Amendment grounds. The Court did not address the challenge in light of its determination that the indictment should be dismissed for failure to comply with Executive Law § 63 (3). We likewise do not consider the Fourth Amendment argument.
 

 [2]
 

 . Swanson, The Background and Development of the Office of Attorney General in New York State, 163 (1954). The Executive Law itself recognizes this division of prosecutorial responsibility. Section 52 (now section 63 [2]), as passed in 1895 and as it reads today, provides that when conducting a criminal action, the Attorney General
 

 “shall exercise all the powers and perform all the duties in respect of such actions or proceedings, which the district attorney would otherwise be authorized or required to exercise or perform; and in any of such actions or proceedings the district attorney shall only exercise such powers and perform such duties as are required of him by the attorney-general or the deputy attorney-general so attending” (L 1895, ch 821, added as section 62 in recodified Executive Law of 1901 [L 1909, ch 23], added as section 63 [2] in recodified Executive Law of 1951 [L 1951, ch 800]).
 

 [3]
 

 . When American independence stripped King George III of his power to appoint the New York Attorney General, the Constitutional Convention of 1777 assumed that role and appointed Egbert Benson as the State’s first Attorney General
 
 (see
 
 2 Lincoln, The Constitutional History of New York, 526-527 [1906]). Following Benson’s appointment, the Council of Appointment continued to choose the Attorney General until the Constitution of 1821 abolished the Council. From then on, the office of Attorney General has been elective
 
 (see
 
 Report of Temporary State Commission on the Constitutional Convention, Report No. 14, State Government, 195-196 [1967]).
 

 [4]
 

 . The statute provided, however, that in New York County the prosecutorial duties remained with the Attorney General.
 

 [5]
 

 . Under the Constitution of 1846, District Attorneys were to be elected by voters of the respective counties, as is true today
 
 (see
 
 NY Const, art XIII, § 13;
 
 see also
 
 2 Lincoln,
 
 supra
 
 note 3, at 527-528).
 

 [6]
 

 . Upon proper request pursuant to the Executive Law, however, the Attorney General’s ‘latent powers [of prosecution] are revived”
 
 (People v Zara,
 
 44 Misc 2d 698, 701 [Sup Ct, Suffolk County 1964] [Munder, J.]).
 
 Zara
 
 properly recognized that when those powers are activated, the Attorney General has the prosecutorial powers otherwise held by the District Attorney
 
 (see
 
 Letter of Attorney General Louis Lefkowitz, Bill Jacket, L 1965, ch 790;
 
 see also
 
 CPL 1.20 [32] [defining “district attorney” to mean, “where appropriate, the attorney general, an assistant attorney general, a deputy attorney general or a special deputy attorney general”]).
 

 [7]
 

 . To be sure, the Attorney General enjoys a sweeping statutory array of prosecutorial and other law-enforcement authority: to prosecute business frauds and other deceptive practices
 
 (see
 
 Executive Law § 63 [12]; General Business Law § 349
 
 et seq.);
 
 commence civil investigations in the public interest
 
 (see
 
 Executive Law § 63 [8]); bring actions to remove persons unlawfully in public or corporate office
 
 (see
 
 Executive Law § 63-b); enforce the State’s anti-discrimination and human rights laws
 
 (see
 
 Executive Law § 63 [9]-[10]); enforce statutes regulating toxic substances in the workplace
 
 (see
 
 Labor Law § 882); prosecute “all persons indicted for corrupting or attempting to corrupt any member or member-elect of the legislature, or the commissioner of general services” (Executive Law § 63 [4]); bring actions to recover public funds
 
 (see
 
 Executive Law § 63-e [1]); defend the State’s remainder interest in certain trusts (see Executive Law § 63 [11]; Social Services Law § 366 [2] [b] [2]); and other powers too numerous to mention
 
 (see generally
 
 96 NY Jur 2d, State of New York § 24
 
 et seq.).
 

 [8]
 

 . In 1895 the Legislature amended Executive Law § 62 to allow only the Governor — and not Justices of the Supreme Court — to request the Attorney General to prosecute an individual case (see L 1895, ch 821).
 

 [9]
 

 . The Appellate Division in
 
 People v Fox
 
 dismissed the defendant’s indictment, concluding that the prosecutorial request by the department’s Acting General Counsel was insufficient to satisfy Executive Law § 63 (3) where, as here, the record contained no information that the department head was aware that an investigation was taking place or that counsel made the request. Relying on CPL 210.20 and
 
 Di Falco
 
 (44 NY2d at 488), however, the
 
 Fox
 
 court went on to hold that the dismissal of the indictment following
 
 *133
 
 conviction did not foreclose a proper re-prosecution (see
 
 Fox,
 
 253 AD2d at 195).